LARSON ZIRZOW & KAPLAN, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzklegal.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzklegal.com
SHARA L. LARSON, ESQ.
Nevada Bar No. 7786
E-mail: slarson@lzklegal.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| In re: | Case No.: 17-15530-ABL |
|---|---|
| CM EBAR, LLC, | Chapter 11 |
| Debtor. | Date: OST Pending<br>Time: OST Pending |

**DEBTOR'S MOTION FOR AN ORDER AUTHORIZING AND APPROVING THE SALE OF TWO LIQUOR LICENSES PURSUANT TO 11 U.S.C. § 363 FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, AND ENCUMBRANCES; MOTION FOR AN ORDER TO SHOW CAUSE AS TO WHY THE CALIFORNIA LICENSING AUTHORITIES SHOULD NOT BE HELD IN CONTEMPT AND SANCTIONED <u>FOR WILLFUL VIOLATIONS OF THE AUTOMATIC STAY</u>**

CM Ebar, LLC, the above captioned debtor and debtor-in-possession ("**CM EBAR**" or the "**Debtor**"), hereby submits its motion (the "**Motion**") seeking the entry of an order authorizing and approving the sale of two Liquor Licenses (as hereinafter defined) free and clear of any and all liens, claims and encumbrances. This Motion also requests that the Court issue an order to show cause, thereby directing the California Department of Alcoholic Beverage Control (the "**ABC**") or the California Department of Tax and Fee Administration (the "**CDTFA**" and collectively with ABC, the "**Departments**"), formerly the Board of Equalization to explain why it has not committed intentional and willful violations of the automatic stay in section 362 of title 11 of the

United States Code (the "**Bankruptcy Code**") by indicating their intention to interfere with the transfer by the Debtor of two liquor licenses to the Buyers as is necessary for the success of the Debtor's Proposed Chapter 11 Plan (the "**Plan**"), and thus why it should not be held in contempt of court and sanctioned for such conduct.

This Motion is made and based on the attached memorandum of points and authorities, the Declaration of Dean Vasquez (the "**Vasquez Declaration**") filed in support hereof, the Declaration of Shara L. Larson, Esq. (the "**Larson Declaration**") filed in support hereof, the Declaration of Barry Kasoff (the "**Kasoff Declaration**") filed in support hereof the papers and pleadings on file in this bankruptcy case, judicial notice of which is respectfully requested, and any arguments of counsel presented at the time of any hearings on the Motion.

## I.    JURISDICTION AND VENUE

1. On October 17, 2017 (the "Petition Date"), Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing its bankruptcy case (the "Chapter 11 Case"). Debtor is authorized to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner. On November 7, 2017, an Official Committee of Unsecured Creditors was appointed in the case by the Office of the United States Trustee.

2. The Debtor is the owner of 7 operating restaurants that go by the trade name of Elephant Bar Restaurant, operating in Nevada, New Mexico, and California. Additional information regarding Debtor's business, capital structure, and the circumstances leading to the chapter 11 filing is contained in the *Omnibus Declaration of Barry Kasoff* [ECF No. 10] and the *Omnibus Declaration of Zachary Conine* [ECF No. 11] (collectively, the "Omnibus Declarations").

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Local Rule 1001(b)(1). Consideration of this Motion is a core proceeding pursuant to 28

U.S.C. § 157(b)(2)(A). The statutory bases for relief herein are sections 362 and 105(a) of the Bankruptcy Code.

4. Pursuant to LR 9014.2, the Debtor consents to the entry of final orders and judgments as to the matters set forth in this Motion.

5. SBR, LLC ("**SBR**"), as successor to the Debtor's original lenders, holds a secured claim in the amount of at least $18,671,190.00 ("**Senior Loan**"), exclusive of interest, attorneys' fees, other fees, costs, and expenses, as of the Petition Date. SBR alleges that the Senior Loan is secured by a continuing security interest in, all of the Debtor's personal property and fixtures. SBR consents to this Sale Motion.

## II.     RELIEF REQUESTED

6. As reflected on Schedule B of the Petition and as disclosed in the Debtor's Amended Disclosure Statement [ECF No. 169], the Debtor owns various liquor licenses. Many of the liquor licenses were issued to Restaurant locations that closed prior to the filing of the Petition (the "**Closed Location Liquor Licenses**"). Prior to the Petition Date, Debtor sought the services of License Locators, Inc. to actively work to locate buyers for and attempt to sell the Closed Location Liquor Licenses. License Locators, Inc. is an independent "broker" whose fees for this service are paid by any located licenses' buyer over and above the purchase price. The services contemplated by License Locators, Inc. are not paid for by any part of the Debtor's estate. License Locators, Inc. is actively searching for buyers to enter into escrow and initiate the administrative process necessary to effectuate any contemplated sale of the Closed Location Liquor Licenses.

7. Prior to the Petition Date, certain Closed Location Liquor Licenses were subject to certain escrow agreements that remain pending but stayed until the Bankruptcy Court's approval of any pre-confirmation sale of the Closed Location Liquor Licenses.

. . .

. . .

8. The Debtor seeks court authorization and approval of the sale of the Debtor's right, title and interest in the following two liquor licenses (the "**Liquor Licenses**") free and clear of any liens, claims and encumbrances:

| Closed Location Address | License Expiration | License Number | Escrow Company | License Value | Amount in Escrow |
|---|---|---|---|---|---|
| 1225 Willow Pass Road Concord, CA 94522 (Contra Costa County) | 2/28/18 | 47-549173 | Capital Trust 006061-GG | $21,000 | $21,000 |
| 75 Serramonte Center Daly City, CA 94015 (San Mateo County) | 10/31/18 | 47-549228 | Capital Trust 006470-GG | $50,000 | $5,000 |

9. The Contra Costa County/Concord Liquor License is subject to an Escrow Instruction Agreement dated December 19, 2016, Escrow No. 006061-GG (the "**Contra Costa Escrow Instructions**"). Attached hereto as **Exhibit 1**. The Contra Costa Escrow Instructions provide for the potential sale of the Contra Costa Liquor License to Little Beast Restaurant, Inc., LLC ("**Contra Costa Buyer**") for the Purchase Price of $21,000. As per the Contra Costa Escrow Instructions, close of escrow and transfer was contingent on multiple conditions. Critically, the Contra Costa Escrow Instructions provide that the escrow would be cancelled if the Buyer was not approved by the California ABC. Thus, the Contra Costa Escrow Instruction and the associated closing and transfer were conditioned on the approval of the Buyer by ABC. On or around December 11, 2017, Capital Trust Escrow advised that the Contra Costa Buyer had been approved by the ABC. The full amount of the Purchase Price is currently being held in escrow. On or around December 7, 2017, Capital Trust Escrow received the 202A letter from the ABC confirming approval of the buyer. Attached hereto as **Exhibit 5**.

10. The San Mateo County /Daly City Liquor License is subject to an Escrow Instruction Agreement dated May 1, 2017, Escrow No. 006470-GG (the "**San Mateo Escrow Instructions**"). Attached hereto as **Exhibit 2**. The San Mateo Escrow Instructions provide for the potential sale of the San Mateo Liquor License to Hash House & Brews, LLC ("**San Mateo Buyer,**" and collectively with the Contra Costa Buyer, the "**Buyers**") for the Purchase Price of $50,000. As per the San Mateo Escrow Instructions, close of escrow and transfer was contingent

on multiple conditions. Critically, the San Mateo Escrow Instructions provide that the escrow would be cancelled if the Buyer was not approved by the California ABC. Thus, the San Mateo Escrow Instruction and the associated closing and transfer were conditioned on the approval of the Buyer by ABC. On or around November 14, 2017, Capital Trust Escrow advised that the San Mateo Buyer had been approved by the ABC. The full amount of the Purchase Price is currently being held in escrow. On or around November 14, 2017, Capital Trust Escrow received the 202A letter from the ABC confirming approval of the buyer. Attached hereto as **Exhibit 5.**

11. In regard to the values of the two Liquor Licenses, both Liquor Licenses are within the average sales prices for type 47 licenses in those counties and are within market value. See Vasquez Declaration.

12. The Escrow Instructions and related documents, and the proposed sale of the Liquor Licenses, were all negotiated in good faith, at arms' length, and are for fair value. No prior relationships or connections exists between the Debtor and the Contra Costa Buyer and the San Mateo Buyer other than as disclosed herein.

13. Shortly after being advised that the ABC had approved the Contra Costa Buyer and the San Mateo Buyer by Capital Trust Escrow but prior to the Debtor's ability to bring forth a motion to have the sale and transfer approved by this Court, Capital Trust Escrow contacted Debtor's Counsel and indicated that the ABC, or related department had placed a hold on the transfer.

14. Debtor and Capital Escrow, thereafter, began contacting individuals at the ABC and the CDTFA, to determine the reason and nature of the hold and to assess whether the transfers of the Liquor Licenses could proceed toward obtaining Bankruptcy Court approval and subsequently closing the sales.

15. Debtor was advised that CDTFA has placed the hold in order to allow the CDTFA to complete an audit of the Debtor. Written notice of the audit, dated December 7, 2017, was not received by the Debtor until December 15, 2017. See Audit Notice attached as **Exhibit 3**.

16. Debtor spoke with the Senior Tax Auditor, Rupal McCain and her supervisor, Gregory Joseph, on January 2, 2018 to discuss providing information to CDTFA for the auditing process. During that call, Mr. Joseph indicated that the auditors had not placed the hold on the account and that they were not sure of the reason for the hold but that they would look into it. See Larson Declaration.

17. In subsequent attempts to determine the true reason for the hold and whether or not the ABC would allow the transfers to buyers to occur, Debtor contacted multiple individuals with the ABC and CDTFA and answers were hard to come by. However, on or about January 4, 2018, Ms. McCain advised Debtor Counsel in writing that the hold would be released on January 5, 2018. See Email from Ms. McCain attached as **Exhibit 4**; see Larson Declaration.

18. Between January 5, 2018 through the filing of this Motion, Debtor has continued to try to obtain information as to whether the hold would actually be released as represented in the January 4, 2018 email, as to the reason for the hold and as to whether California would work with the Debtor to allow the transfers to occur so that buyers of liquor licenses would not be lost to the detriment of all creditors. The release of the hold did not occur on January 5, 2018 despite the January 4, 2018 email representing that the hold would be released. See Larson Declaration.

19. On January 10, 2018, Debtor Counsel left messages with Keith Meridith of the Special in the Special Operations Department, Bankruptcy Division. Shortly after leaving a message with Mr. Meridith, Debtor Counsel received a call from Juanita Saucedo, who indicated that she was the individual who requested that the withhold be placed on the account do to the Debtor's potential liability on taxes to California. Ms. Sauceo indicated that the hold was placed in order to insure that California received payment on any claim that it may have. Ms. Saucedo indicated that she spoke with her supervisors and that as of January 10, 2018, the withhold and compliance issues will be handled by Mr. Meridith and that he is "doing everything on the account" going forward. Ms Saucedo indicated that she would instruct Mr. Meridith to contact Debtor Counsel. See Larson Declaration.

20. Since Ms. Saucedo's January 10, 2011 telephone call, Debtor Counsel has called Mr. Meridith at least three times and has not received a return phone call. See Larson Declaration.

21. It appears that California has decided to maintain the hold on the free transfer of the licenses for pecuniary rather than regulatory purposes. It is Debtor's position that the transfers should be permitted to buyers and that the funds associated with the transfers should be retained by the Debtor for distribution in accordance with the Debtor's proposed Plan which is set for confirmation on February 6, 2018. The sale of these Liquor Licenses and the other liquor licenses held by the Debtor is a necessary and indeed critical component to Debtor's Plan of Reorganization.

### III.    SALE MOTION

**A.    THE SALE IS SUPPORTED BY SOUND BUSINESS JUDGMENT.**

22. Section 363(b)(1) of the Bankruptcy Code governs the sale of property of a bankruptcy estate, and provides, in pertinent part, as follows: "The trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).

23. For a sale pursuant to section 363(b) of the Bankruptcy Code, a debtor must demonstrate a valid business justification to grant the request. See Simantob v. Claims Prosecutor, LLC (In re Lahijani), 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005); 240 N. Brand Partners, Ltd. v. Colony GFP Partners (In re 240 N. Brand Partners, Ltd.), 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996); Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988). The trustee is afforded great judicial deference in the exercise of his business judgment. Lahijani, 325 B.R. at 289; GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd., 331 B.R. 251, 254 (N.D. Tex. 2005).

24. Consistent with the foregoing, bankruptcy courts consider a wide range of factors in approving sales outside the ordinary course of business, generally including the following:

       (1)      Whether a sufficient business reason exists for the sale;

       (2)      Whether the proposed sale is in the best interest of the estate, which considers the following factors:

            (a)     that terms of the sale are fair and reasonable;

            (b)     that the proposed sale has been adequately marketed;

            (c)     that the proposed sales terms have been properly negotiated and proposed in good faith; and

            (d)     that the purchaser is involved in an "arms-length" transaction with the seller; and

       (3)      Whether notice of the sale was sufficient.

See Walter, 83 B.R. at 19-20.

25. The bankruptcy court should consider all factors pertaining to the proceeding and, accordingly, act to further the diverse interest of the debtor, creditors and equity holders, alike. It is not necessary for the bankruptcy court to consider each factor listed in the cases, or to use any specific set of factors. See 240 North Brand Partners, Ltd., 200 B.R. at 659; In re Work Recovery, Inc., 202 B.R. 301, 304 (Bankr. D. Ariz. 1996) (using a six factor-test). Moreover, to the extent that any factors are utilized, there is no necessity that those factors must be given equal weight to determine the outcome. See Matter of Embrace Sys. Corp., 178 B.R. 112 (Bankr. W.D. Mich. 1995).

26. In the case at hand, the Debtors have exercised their sound business judgment by agreeing to the proposed private sale of the Liquor License to the Buyers. The Debtor asserts that the purchase prices for the Liquor Licenses are for fair value and subject to reasonable terms and conditions under the circumstances, and the sale thereof will benefit the estate.

**B.    SALE FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES.**

27. The Debtors ask that the Court approve the sale of the Liquor License to the Buyers free and clear of all liens, claims, encumbrances and interests, with any such matters to attach to the sale proceeds with the same validity and priority as existed prior to the sale.

28. Section 363(f) of the Bankruptcy Code provides that a trustee may sell property free and clear of any interest in such property if one of the following conditions is satisfied:

1. applicable non bankruptcy law permits sale of such property free and clear of such interest;

2. such entity consents;

3. such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

4. such interest is in bona fide dispute; or

5. such entity could be compelled, in a legal or equitable proceeding to accept a money satisfaction of such interest.

See 11 U.S.C. § 363(f). Because section 363(f) of the Bankruptcy Code is stated in the disjunctive, when selling property of the estate, it is only necessary to meet one of the five conditions above. See Citicorp Mortgage, Inc., v. Brooks (In re Ex-Cel Concrete Co.), 178 B.R. 198, 203 n.7 (B.A.P. 9th Cir. 1995).

### C. SBR CONSENTS TO THE SALE AND THE INTERESTS OF ANY OTHER CREDITORS HOLDING LIENS CONTINUES TO THE SALE PROCEEDS.

29. Under section 363(f)(2) of the Bankruptcy Code, the Debtors may sell estate property free and clear of liens, claims, interests and encumbrances if the entity asserting the interest consents. SBR, to the extent it has any security interest in the liquor licenses, has consented to this sale. Additionally, the ABC has already approved the Buyer as a proper recipient of the transfer of the license, thereby indicating California's consent as to allowing the transfer to the buyer. See Exhibit 5. To the extent that any party asserting an interest receives notice of this Motion and does not file a written objection hereto, such party should be deemed to have consented to the proposed sale free and clear of its asserted interest(s). See In re Channel One Commc'n, Inc., 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990). The proposed form of sale order specifically provides that any liens shall continue in and to the proceeds of sale, which will be

deposited into the Debtors' DIP bank account for use in accordance with the Debtor's proposed Plan of Reorganization.

**D.    SECTION 363(M) PROTECTION AND LR 6004(b) DISCLOSURES**

30.    "[W]hen a bankruptcy court authorizes a sale of assets pursuant to § 363(b)(1) of the Bankruptcy Code, it is required to make a finding with respect to the 'good faith' of the purchaser." In re Abbotts Dairies, 788 F.2d 143, 149-150 (3d Cir. 1986).  The purpose of such a finding is to facilitate the operation of section 363(m) of the Bankruptcy Code, which provides for certain protections to be provided to good faith purchasers from the trustee pursuant to section 363.  In this respect, section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. 363(m).

31.    While the Bankruptcy Code does not define "good faith," courts have held that it encompasses fair value, and that typical "bad faith" or misconduct would include collusion between the seller and buyer, or any attempt to take unfair advantage of other potential purchasers.  See 240 North Brand Partners, Ltd., 200 B.R. at 659 (citing Wilde Horse Enterps., Inc., 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991)).

32.    The Debtors submit that the sales of the Liquor Licenses were conducted in an arms' length transaction.  The negotiations between the Buyers and the Debtor have at all times been conducted at arms' length and in good faith under applicable legal standards.  In connection with the proposed sale to the Buyers, the Debtor has retained broker who has evaluated various alternatives, and acted with the intent of obtaining market value for the Liquor Licenses.  See Vasquez Declaration.  The terms of the proposed sales of the Liquor Licenses to the Buyers accomplish this appropriate objective.  The Buyer and the terms of the transfer have also been

approved by the ABC.  See Exhibit 5.  Furthermore, the Buyers are not insiders or affiliates of the Debtor.  See Kasoff Delaration. There are no side agreements, arrangements or understandings between the Debtor and Buyers, and all of the consideration to be provided by Buyers and to be received by Debtor is set forth in the Escrow Instructions and any Addendum.  Finally, the consideration offered under the Escrow Instructions will be subject to objection at the hearing, which will ensure that the Debtor ultimately receives a fair price for it.  For these reasons, the Debtor requests that the Court make a factual determination that the Buyer have purchased the respective Liquor Licenses in good faith as defined under section 363(m) of the Bankruptcy Code.

33.     The Debtor makes the following additional disclosures pursuant to LR 6004(b). No consumer privacy ombudsman is required pursuant to section 332 of the Bankruptcy Code because no personally identifiable information is proposed to be sold in the sales proposed herein. To the best of the Debtor's knowledge, the Buyers have not discussed or entered into any agreements with management or key employees of the Debtor regarding compensation or future employment.  Except as disclosed herein, the Debtor is not entering into any interim agreements or arrangements with the Buyers.  Except as provided per the existing cash collateral stipulation, no release of the sale proceeds is contemplated outside of a confirmed chapter 11 plan of reorganization.  No exemption from transfer taxes is sought for the proposed sale.  No sale of chapter 5 causes of action is contemplated by the proposed sale.  Any successor liability is proposed to be terminated pursuant to the terms of the sale and sale order.  No sale free and clear of a possessory leasehold interest or license is proposed.  Credit bidding pursuant to section 363(k) of the Bankruptcy Code is not contemplated.

**E.     IMMEDIATE RELIEF PER BANKRUPTCY RULE 6004(H).**

34.     The Debtor requests that the Court waive Bankruptcy Rule 6004(h), which provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  (emphasis added).  Although Rule 6004(h) is silent as to when a court should "order otherwise" and

eliminate or reduce the fourteen (14) day stay period, the stay period should be eliminated to permit a sale or other transaction to close immediately where there has been no objection to the procedure. In the case at hand, waiver of Rule 6004(h) will permit the Debtor to immediately realize the value of the Liquor License for the benefit of their estates and creditors, and will also alleviate any concerns of the Buyers. As such, relief from any stay of effectiveness of sale should be granted.

## IV. ORDER TO SHOW CAUSE MOTION

### A. THE AUTOMATIC STAY IN SECTION 362(A).

35. Section 362(a) of the Bankruptcy Code provides, in pertinent part, as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;
>
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

11 U.S.C. 362(a).

36. Actions taken in violation of the automatic stay are void *ab initio* and have no effect. See Griffin v. Wardrobe (In re Wardrobe), 559 F.3d 932, 934 (9th Cir. 2009); United

States v. Schwartz (In re Schwartz), 954 F.2d 569, 572-73 (9th Cir. 1992). As explained by the Ninth Circuit in Schwartz:

> [T]he automatic stay plays a vital role in bankruptcy. It is designed to protect debtors from all collection efforts while they attempt to regain their financial footing. As Congress stated: "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his [or her] creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy."

954 F.2d at 571 (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1978).

37. Bankruptcy courts hold the exclusive power to interpret the scope of the automatic stay. See Gruntz v. Cnty. of L.A. (*In re Gruntz)*, 202 F.3d 1074, 1081-82 (9th Cir. 2000). The Ninth Circuit has repeatedly emphasized the absolute power of the automatic stay, including even the affirmative requirement of compliance and to discontinue post-petition collection actions. See Sternberg v. Johnston, 595 F.3d 937, 943 (9th Cir. 2010); Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210, 1215 (9th Cir. 2002). Further, the Ninth Circuit has unequivocally held that "[t]ransfers in violation of the automatic stay are void." 40235 Washington St. Corp. v. Lusardi, 329 F.3d 1076, 1080 (9th Cir. 2003). Creditors who attempt to enforce their nonbankruptcy rights against a debtor or its property without first obtaining relief from the stay may be held liable for damages for contempt of court. See Johnston Envtl. Corp. v. Knight *(In re Goodman),* 991 F.2d 613, 620 (9th Cir. 1993) (holding that a corporation may recover civil contempt damages for a stay violation).

38. "Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993). The automatic stay imposed by section 362(a) "qualifies as a specific and definite court order." Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003). A "willful" violation of the automatic stay can be shown in instances where a party knew of the debtor's bankruptcy filing and intended to take the actions in the state court which violated the stay. See Havelock v. Taxel

(In re Pace), 67 F.3d 187, 191 (9th Cir. 1995).  A party asserting contempt for violation of a court order must establish that the accused party "(1) violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence."  Labor/Cnty. Strategy Ctr. v. Los Angeles Cnty. Metro. Transp. Auth., 564 F.3d 1115, 1123 (9th Cir. 2009) (quoting In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d at 695).

**B.    THE "POLICE OR REGULATORY POWER" EXCEPTION TO THE AUTOMATIC STAY.**

**1.    General Standard and Applicable Tests.**

39.    Section 362(b)(4) of the Bankruptcy Code, known as the "police or regulatory power" exception to the automatic stay, provides that the following is not stayed:

> (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power;

11 U.S.C. § 362(b)(4).

40.    The term "police and regulatory power" as used in section 362(b)(4) is not defined in the Bankruptcy Code.  The Ninth Circuit applies two alternative tests to determine whether an action is in exercise of a governmental unit's police and regulatory power:  the "pecuniary purpose" test and the "public policy" test.  See City & County of San Francisco v. PG & E Corp., 433 F.3d 1115, 1123-24 (9th Cir. 2006); see also Cal. v. Villalobos (In re Villalobos), 453 B.R. 404, 409 (D. Nev. 2011).

41.    The determination of whether a particular governmental action qualifies as a police or regulatory action must be made on the basis of a case-specific inquiry.  Id. at 1127; Cal. v. Yun (In re Yun), 476 B.R. 243, 253 (B.A.P. 9th Cir. 2012) ("These are both factual determinations to be made based on the presentation of evidence.").  "Not every police or regulatory action is

automatically exempt." Yun, 476 B.R. at 253 (citing Mass. v. First Alliance Mortg. Co. (In re First Alliance Mortg. Co.), 263 B.R. 99, 107 (B.A.P. 9th Cir. 2001)). "The Court has a duty to scrutinize the governmental unit's claims that it is acting under its police and regulatory power and to determine that a valid exception to the automatic stay exists, rather than simply assuming the police and regulatory power is involved because the governmental unit has made an appearance." Maricopa Cnty. v. PMI-DVW Real Estate Holdings, L.L.P. (In re PMI-DVW Real Estate Holdings, L.L.P.), 240 B.R. 24, 31 (Bankr. D. Ariz. 1999) (citing Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora (In re Corporacion de Servicios Medicos Hospitalarios de Fajardo), 60 B.R. 920, 932-33 (D.P.R. 1986)).

42. Under the pecuniary purpose test, "the court determines whether the government action relates primarily to the protection of the government's pecuniary interest in the debtor's property or to matters of safety and welfare." Id. at 1124-25. "If the action primarily seeks to protect the government's pecuniary interest, the automatic stay applies. If the suit primarily seeks to protect the public safety and welfare, the automatic stay does not apply." Id. at 1124, citing Universal Life Church, Inc. v. United States (In re Universal Life Church, Inc.), 128 F.3d 1294, 1297 (9th Cir. 1997)).

43. Under the public policy test, "the court determines whether the government seeks to 'effectuate public policy' or to adjudicate 'private rights.'" Id. at 1125. If the primary purpose of the suit is to effectuate public policy, then the exception to the automatic stay applies; however, "[a] suit does not satisfy the 'public purpose' test if it is brought primarily to advantage discrete and identifiable individuals or entities rather than some broader segment of the public." Id.

44. These tests are applied by analyzing the individual claims the governmental unit asserts against the debtor. Id. at 1125. Further, in applying the tests, the bankruptcy court must be governed by at least two underlying principles. See Yun, 476 B.R. at 253. First, exceptions to the automatic stay are interpreted narrowly. See id. (citing cases). Second, "governmental units cannot, by an exercise of their police or regulatory powers, subvert the relief afforded by the

federal bankruptcy laws." Id. (quoting Thomassen v. Div. of Med. Quality Assurance, Dept. of Consumer Affairs, State of Cal. (In re Thomassen), 15 B.R. 907 (B.A.P. 9th Cir. 1981)).

45. A governmental unit "may not bypass the automatic stay to enforce a monetary judgment, but § 362(b)(4) does not bar [the governmental unit] from seeking the entry of a monetary judgment. . . . [W]hen the government is seeking only the entry of a money judgment against debtors, '[t]he entry of judgment would simply fix the amount of the government's unsecured claim against the debtors. It would not convert the government into a secured creditor, force the payment of a prepetition debt, or otherwise give the government a pecuniary advantage over other creditors of the debtors' estate." Villalobos, 453 B.R. at 414 (quoting In re Commonwealth Cos., Inc., 913 F.2d 518, 524 (8th Cir. 1990)).

**2.    Application of Section 362(b)(4) to the Departments' Improper Conduct.**

46. Here, the police or regulatory exception to the automatic stay provided in Section 362(b)(4) does not apply to excuse Departments' improper conduct. First, the Departments' conduct fails the pecuniary purpose test because it has been obstructing the transfer of the Debtor's liquor licenses as it believes the Debtor may have outstanding taxes it must pay first. Indeed, coercing the Debtor to pay these outstanding taxes, if they exist, relates solely to "the government's pecuniary interest in the Debtor's property." See City & County of San Francisco v. PG & E Corp., 433 F.3d 1115, 1123-24 (9th Cir. 2006).

47. Second, the Departments' conduct fails the public policy test because its coercion of the Debtor to obtain alleged past due taxes is meant to effectuate public policy by obtaining additional tax dollars for the state.

48. Additionally, the Departments' conduct violates the principal against "subvert[ing] the relief afforded by the federal bankruptcy laws." Cal. v. Yun (In re Yun), 476 B.R. 243, 253 (B.A.P. 9th Cir. 2012) (quoting Thomassen v. Div. of Med. Quality Assurance, Dept. of Consumer Affairs, State of Cal. (In re Thomassen), 15 B.R. 907 (B.A.P. 9th Cir. 1981)). Indeed, by obstructing the transfer of the two liquor licenses the Departments are jeopardizing the

Debtor's proposed Plan.  The Plan provides for buyers to purchase the Debtor's liquor licenses and then to transfer the liquor licenses to the buyers.  However, although the Buyers have been approved, the Departments are refusing to allow the liquor licenses to transfer the new owner for the sole purpose of furthering California's pecuniary interests.

49.     This refusal is causing and will cause further disastrous consequences to the Debtor because the buyers of these Liquor Licenses may be lost if they are unable to sell any alcohol at their restaurant locations.  The threat of holding the transfers, if permitted to continue to future purchases of liquor licenses will have significant detrimental effects on the proposed Plan as the proposed buyer of the Restaurant Assets for the open locations may balk at the transaction if the ability to sell alcohol is held up unjustifiably by the state of California.

50.     Therefore, the Departments' conduct violates the automatic stay because the purpose of its conduct does not satisfy the "pecuniary purpose" test or the "public policy" test.[1]

**3.      The Proper Method for the Departments to Collect any Past Due Taxes owed by the Debtor is Provided in Section 1129(a)(9).**

51.     In addition to violating the automatic stay and subverting the relief afforded to the Debtor by the federal bankruptcy laws, the Departments are attempting to circumvent the well-established rules and priorities for creditors who are owed money by the estate.

52.     Specifically, Section 1129(a)(9) provides specific requirements regarding how pre-petition tax debt must be treated under a Chapter 11 Plan:

---

[1] Notably, even if a governmental unit's actions are excepted from the automatic stay pursuant to section 362(b)(4) of the Bankruptcy Code, bankruptcy courts may still prevent a governmental unit's bad-faith exercise of its police or regulatory power against the estate.  See PMI-DVW Real Estate Holdings, L.L.P., 240 B.R. at 32, citing Javens v. City of Hazel Park (In re Javens), 107 F.3d 359, 366 (6th Cir. 1997).  "Congress removed local regulation only from the effect of the automatic stay; it did not eliminate the bankruptcy court's power to enjoin the enforcement of local regulation which is shown to be used in bad faith."  In re Nat'l Hospital and Institutional Builders Co., 658 F.2d 39, 43 (2d Cir. 1981) (decided under former Bankruptcy Act).  As a result, the Court has the power under section 105 of the Bankruptcy Code to protect the property of interests of the bankruptcy estate and thereby present from using its police or regulatory power.  See id.  Out of an abundance of caution, the Debtor reserves its right to argue the Departments are acting in bad faith.

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

(A) with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(B) with respect to a class of claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, each holder of a claim of such class will receive--

(i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;

(C) with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim regular installment payments in cash--

(i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

(ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and

(iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b)); and

(D) with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in subparagraph (C).

53. Here, subsections (a)(9)(C) and (D) are the subsections which will apply to the Departments' pre-petition tax debt. See In re Trenton Ridge Inv'rs, LLC, 461 B.R. 440, 476 (Bankr. S.D. Ohio 2011) (explaining "Section 1129(a)(9)(C) requires a particular treatment of unsecured claims of governmental units having priority under § 507(a)(8) of the Bankruptcy Code" and Section 1129(a)(9)(D) "relates to secured claims which would otherwise meet the

description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of that claim.").

54. Accordingly, because a Court may not confirm a chapter 11 plan of reorganization unless Section 1129(a)(9) is satisfied, the Departments need not be concerned that its pre-petition tax debt will not be resolved. As a result, it is apparent the Departments' justification for obstructing the transfer of these two liquor licenses is illusory and wholly inappropriate.

55. Thus, it is unnecessary and improper for the Departments to prevent the transfer of the two liquor licenses based on concerns regarding taxes because such actions are a violation of the automatic stay and the Bankruptcy Code contains the exclusive mechanism for government entities to collect pre-petition tax debt.

56. Therefore, because the Departments' improper actions are compromising the Debtor's right to avail itself of the protections of the Bankruptcy Code by unjustifiably undermining the Debtor's Plan, the Debtor respectfully requests the Court direct the Departments to show cause why it should not be held in contempt for violating the Bankruptcy Code.

### V.  **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court enter an order thereby:

1. Authorizing and approving the sale of the Liquor Licenses to the respective Buyers via private sale, free and clear of any liens, claims and encumbrances, and subject to the terms and conditions in the respective escrow Instructions and proposed form of order;

2. Directing the Departments to show cause as to why they should not be held in contempt of Court and sanctioned for willful violations of the automatic stay as a result of its unjustifiable obstruction of the transfer of the two liquor licenses;

3. Directing the Department to pay all of the Debtor's reasonable attorneys' fees and costs in bringing and prosecuting this Motion through to decision because it involves willful violations of the automatic stay; and

. . .

4. The Court grant the Debtor such other and further relief as is just and proper.

Dated this 12th day of January, 2018.

                Respectfully submitted,

                By: /s/ Zachariah Larson
                LARSON ZIRZOW & KAPLAN, LLC
                ZACHARIAH LARSON, ESQ.
                MATTHEW C. ZIRZOW, ESQ.
                SHARA L. LARSON, ESQ.
                850 E. Bonneville Ave.
                Las Vegas, Nevada 89101

                Attorneys for Debtor